**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOSEPH L. LEWIS,                         :

     Petitioner,                         :

vs.                                             :          CA 22-0108-CG-MU

REOSHA BUTLER,                         :

     Respondent.                         :


## REPORT AND RECOMMENDATION

Joseph L. Lewis, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Lewis challenges the validity of his attempted murder conviction in the Circuit Court of Mobile County, Alabama, and his 98-year and one-day sentence. (*See id.*, PageID. 2). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find that it is procedurally barred from reaching the merits of the claims Lewis raises.


## FACTUAL BACKGROUND

On December 8, 2006, the Grand Jury of the Circuit Court of Mobile County, Alabama, indicted Lewis on a charge of attempted murder. (Doc. 7-1, PageID. 51). The

indictment charged that Joseph Lee Lewis "did, with the intent to cause the death of

**Leon Dunklin**, a violation of § 13A-6-2 of the Code of Alabama, attempt to cause the

death of **Leon Dunklin**, by **shooting him with a gun**, in violation of § 13A-4-2 of the

Code of Alabama[.]" (*Id.*) (emphasis in original).

The week before trial, specifically on July 18, 2007, Lewis' appointed trial counsel

filed a motion to suppress three statements made by Lewis immediately after the

incident in which he was charged with attempted murder on the basis that he "was

intoxicated at the time of these statements and therefore lacked the capacity to

appreciate, understand[,] or assert his constitutional rights to remain silent or have an

attorney present during his repeated questioning by the police[.]" (Doc. 7-1, PageID.

73). On the first day of trial, July 23, 2007, no suppression hearing took place because

defense counsel withdrew the motion to suppress prior to the taking of testimony. (*See

id.,* PageID. 120-21).

On July 23-25, 2007, a jury trial was conducted in Lewis' attempted murder case.

(*See* Doc. 7-1, PageID. 128-242; Doc. 7-2, PageID. 243-429).

> The State's evidence tended to show the following: On July 14,
> 2006, Officer Roderick Cotton of the Mobile Police Department was
> dispatched to a residence on Edwards Street in Mobile. When he arrived
> at the house he found Leon Dunklin in one of the bedrooms;[1] Dunklin was
> kneeling by the side of a bed holding his head in his hands. Officer Cotton
> testified that Dunklin had a severe head wound, that he had a large hole in
> the left side of his head, and that it looked like a portion of his nose was
> also missing. Dr. Herb Phelan, a trauma surgeon at the University of
> South Alabama Medical Center where Dunklin was taken for treatment,
> testified that Dunklin's left eye was missing. He said that Dunklin would
> have died as a result of the gunshot wound without immediate medical
> care.

---

[1]     Dunklin was found in Carolyn Edwards' bedroom. (*See* Doc. 7-2, PageID. 288-89; *see also id.,* PageID. 344 (Dunklin's testimony that he was shot in Edwards' bedroom)).

Carolyn Edwards testified that on July 14, 2006, Dunklin and Lewis were living at her house.[2] She said that she was sitting on the front porch when Dunklin arrived at the house with lunch. Dunklin went to Edwards's bedroom to retrieve a soda from under her bed. Lewis was also in the house. She said that while she was on the porch she heard raised voices and then a "pow," which sounded like a gunshot.[3]

Okenia Chambers, a home health-care worker who had been helping Edwards and who was at the house when the incident occurred, testified that Lewis left the house after she heard a "pop" and Lewis said, "That m___ f___ was f___ with me," and "You're goddamn right I shot him."

Dunklin testified that when he came to Edwards's house with lunch he went to Edwards's bedroom to retrieve a soda that she kept stored under her bed. He said that when he was in Edwards's bedroom Lewis came in and told him that his father did not like Dunklin. He said that he told Lewis that he did not have time for such stupidness and that Lewis then shot him. Dunklin testified that Lewis had been drinking when the shooting occurred.[4]

Detective Russell Hardeman of the Mobile Police Department testified that he first interviewed Lewis outside of Edwards's house and then again at the police station.[5] Detective Hardeman said that he advised

---

[2]	Diann Murray also lived at the house with Lewis. (*See* Doc. 7-1, PageID. 156). Edwards testified that Lewis' mother was her next-door neighbor. (*Id.*).

[3]	Edwards testified that sometime after hearing the shot, Lewis walked out of her house and over to his mother's house. (*See* Doc. 7-1, PageID. 170 & 171). The witness also testified that in the three to four years Leon Dunklin lived with her, she had never seen him with a gun. (*See id.,* PageID. 172).

[4]	Indeed, Dunklin testified Lewis was drunk. (Doc. 7-2, PageID. 332). He also testified he did not have a gun that day; instead, Lewis had a gun. (*Id.,* PageID. 332-33). And it was Dunklin's further testimony that he and Lewis never had a wrestling match with the gun. (*Id.,* PageID. 333). And, finally, Dunklin testified that he had seen the gun introduced at Lewis' trial a few weeks prior to his being shot in Lewis' possession. (*See id.,* PageID. 337).

[5]	Officer Paul Workman, Jr. and several other officers observed Lewis in the backyard of the house next to 805 Edwards Street (*see* Doc. 7-1, PageID. 203-05), that is, 803 Edwards Street (*id.,* PageID. 215), and after a witness on the scene made the spontaneous statement, "[T]hat's him[,]" the officers secured Lewis in a police car, a Captain Dove read him his *Miranda* rights, and the officers asked Lewis where the gun was located (*id.,* PageID. 205; *see id.,* PageID. 206 (Lewis led officers to the gun in the backyard of the house next to the house in which Dunklin and Lewis lived); *id.,* PageID. 215 (Corporal Greg Camilleri's testimony that he photographed a Hi-Point nine-millimeter Luger pistol under a concrete patio in the backyard of 803 Edwards Street)). The shirt, pants, and shoes Lewis was wearing on the date of the incident were recovered by evidence technicians with the Mobile Police Department; the (Continued)

Lewis of his <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights, that Lewis agreed to speak with him, that Lewis was coherent, and that Lewis appeared to understand his rights.

Lewis gave Detective Hardeman several versions of the events leading to Dunklin's shooting. Lewis first said that he and Dunklin were "tussling," that Dunklin had a gun, that he grabbed it, and that the gun went off, hitting Dunklin. Next he said that Dunklin came out with a gun, that he grabbed it, and that the gun went off.[6] There were also discrepancies in Lewis's statements to police concerning the location of the shooting. Lewis first said that Dunklin came into his room with a gun. Next he said that he was in the kitchen when Dunklin came into that room with a gun. Finally, Lewis said that he was in Edwards's room when Dunklin came into that room waving a gun.[7]

*Lewis v. State,* 27 So.3d 600, 601-02 (Ala.Crim.App. 2008) (footnotes added).[8] On July 25, 2007, a jury of Lewis' peers returned a verdict finding him guilty of the attempted murder of Leon Dunklin. (Doc. 7-2, PageID. 430). After return of the guilty verdict, the trial judge scheduled Lewis for sentencing on August 30, 2007. (*Id.,* PageID. 433). On that date, Lewis was sentenced to "98 years and one day in the state penitentiary." (Doc. 7-3, PageID. 443).

_____

shirt had blood stains on the right sleeve and shoulder but there was no blood on the pants or shoes. (*Id.,* PageID. 226-28).

[6] Detective Hardeman did agree on cross-examination that Lewis was consistent in his statements that Dunklin drew the gun. (Doc. 7-2, PageID. 277 & 296). Hardeman also testified that when he questioned Lewis, he could smell alcohol about Lewis' person and described Lewis as being under the influence of alcohol. (*See id.,* PageID. 290-91). As well, Hardeman admitted that Lewis never indicated it was his intent to shoot Dunklin or pull the trigger of the pistol and, instead, indicated the discharge was accidental. (*See id.,* PageID. 291-92). And when Hardeman questioned Dunklin in the hospital, Dunklin told him that he did not remember the shooting. (*Id.,* PageID. 292).

[7] Detective Hardeman opined that the events on the date in question could not have happened in the way Lewis described them. (Doc. 7-2, PageID. 304).

[8] On the second day of trial, July 24, 2007, Defendant Lewis, through counsel, "re-urge[d] the[e] motion to suppress[]" and asked for a ruling. (*See* Doc. 7-1, PageID. 238). The trial court denied the Defendant's motion without conducting a suppression hearing. (*Id.,* PageID. 239).

On September 21, 2007, Lewis' attorney filed a motion for new trial, arguing therein that Lewis did not receive a fair trial because, over objection by the defendant, the prosecution was allowed to play three recoded statements to the jury, evidence he asserts unduly prejudiced him. (Doc. 7-1, PageID. 95; *see also id.,* PageID. 100 ("The statements were given by Mr. Lewis *without* the benefit of counsel present, immediately after the emotionally-charged incident and while the defendant was evidently intoxicated, a point established by the testimony of Detective Hardeman under cross-examination by defense counsel. Mr. Lewis was not in a position to make a truly voluntary, rational decision to speak with the police and therefore his statements should never have been played to the jury[.]")). The trial court denied Lewis' motion by endorsement (*id.*, PageID. 95).

Written notice of appeal was filed on October 2, 2007. (Doc. 7-1, PageID. 102). Appellate counsel for Lewis raised two issues on direct appeal. (*See* Doc. 7-4, PageID. 451 ("THE TRIAL COURT ERRED IN ALLOWING DETECTIVE HARDEMAN TO TESTIFY THAT IN HIS OPINION THE EVENTS COULD NOT HAVE HAPPENED THE WAY THAT THE DEFENDANT SAID THEY DID[; and] [] THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE DEFENDANT'S STATEMNTS WITHOUT A HEARING.")). In a *per curiam* opinion released on October 31, 2008, the Alabama Court of Criminal Appeals remanded Lewis' case "to the Mobile Circuit Court for that court to hold a hearing on Lewis's motion to suppress his statements to police. If the motion is granted, the circuit court is directed to set aside Lewis's conviction and sentence and to grant him a new trial. See *Jackson*. Due return

should be filed in this Court within 60 days from the date of this opinion." *Lewis, supra,* 27 So.3d at 604 (footnote omitted).

The trial court conducted a suppression hearing on December 4, 2008 (*see* Doc. 7-7, PageID. 541-74), and at the conclusion of the hearing denied Lewis' motion to suppress statements made to the police (*see id.,* PageID. 573-74 & 574 ("I think [Detective Hardeman] testified very candidly that he smelled alcohol on [Lewis], and he has testified that, in his judgment, he was under the influence. . . . [T]he reliability of the detective who took th[ese] statement[s] in judging whether or not this defendant voluntarily, intelligently, and knowingly waived his rights and gave the statement[s], I am going to defer to that. And I am going to deny your motion.")).

On return to remand, the Alabama Court of Criminal Appeals affirmed Lewis' attempted murder conviction. *Lewis, supra,* 27 So.3d at 606. The appellate court agreed with the trial court "that there is no indication that Lewis was so intoxicated that his statements were rendered involuntary." *Id.* In addition, on Lewis' only other issue raised on appeal, the appellate court held that "the circuit court committed no error in allowing Detective Hardeman to testify concerning his impressions of the crime scene, specifically, whether the condition of the scene matched Lewis's version of the events." *Id.* at 610. Lewis' application for rehearing (Doc. 7-9) was overruled on June 19, 2009 (Doc. 7-10) and his petition for writ of certiorari to the Alabama Supreme Court (Doc. 7-11) was denied without opinion on August 21, 2009 (Doc. 7-12), with the certificate of judgment issued that same day (August 21, 2009) (Doc. 7-13).

Lewis filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama on July 22, 2010, collaterally attacking his conviction and sentence (Doc. 7-14, PageID. 668; *see also id.,* PageID. 650-67). Therein, he claimed that the following errors were made: (1) he was denied a fair trial and equal protection of the laws because Leon Dunklin, the victim, was allowed to remain in the courtroom through the testimony of numerous witnesses before testifying himself; (2) the verdict stands against the great weight of the evidence adduced at trial and Diann Murray was not called as a witness, thereby denying him a full and fair trial and denying his right to equal protection of the laws; (3) trial counsel was constitutionally ineffective (in failing to call Diann Murray as a witness); (4) the trial court was without jurisdiction to render the judgment or impose sentence because the facts at trial revealed he was not guilty of attempted murder; and (5) his sentence was illegally imposed because the facts at trial revealed he was not guilty of attempted murder. (*See id.,* PageID. 657-67). The State filed its response on October 18, 2010 (*See id.,* PageID. 673-83) and, the following day, October 19, 2010, the trial court entered its order dismissing Lewis' Rule 32 petition, without a hearing, in accordance with Ala.R.Crim.P. 32.7. (*See id.,* PageID. 686-95). Lewis filed written notice of appeal on or about November 12, 2010. (*See id.,* PageID. 696).

On August 11, 2011, the Alabama Court of Criminal Appeals released an unpublished memorandum decision affirming the trial court's summary dismissal of Lewis' Rule 32 petition.[9] (Doc. 7-16).

---

[9] It need be noted that Alabama's state appellate court, as well as the trial court, read Lewis' Rule 32 petition somewhat differently from the undersigned's reading of same. Alabama's courts read the Rule 32 petition filed by Lewis to assert the following claims: "[T]he victim was improperly allowed to remain in the courtroom before testifying in violation of the Rule; [] the trial court unconstitutionally informed the jury of the possible length of the trial; [] the (Continued)

On appeal, Lewis argues that the circuit court erred in summarily denying his petition as his claims did not lack specificity. He repeats the claims that he raised in his petition. However, as determined by the circuit court, Lewis has failed to raise these claims with specific supporting facts to show how he was prejudiced; he merely states allegations of error.

Moreover, as to his issue of absolute innocence, as argued by the State, this claim could have been raised at trial or on appeal. Rule 32.2(b)(3) and (5).

Lewis seems to raise new issues on appeal concerning the denial of his challenge for cause as to 3 perspective jurors and the erroneous admission of expert opinion testimony by a police officer. However, because these issues are being raised for the first time on appeal, they are not properly before this court.

(Doc. 7-16, PageID. 725) (internal citations omitted). Lewis' application for rehearing (Doc. 7-17) was overruled on August 26, 2011 (Doc. 7-18) and his petition for writ of certiorari to the Alabama Supreme Court (Doc. 7-19) was denied without opinion on December 9, 2011 (Doc. 7-20), with the certificate of judgment being issued that same day (December 9, 2011) (Doc. 7-21).

On March 1, 2022 (*see* Doc. 1, PageID. 12), Lewis filed this federal collateral attack on his attempted murder conviction and sentence pursuant to 28 U.S.C. § 2254 (*see id.,* PageID. 1-12). Lewis claims that the arrest warrant issued in his case, his arrest, and subsequent detention were all violative of his Fourth, Fifth, Sixth and Fourteenth Amendment rights on account of the arrest warrant being invalidly issued, the failure to read him his *Miranda* rights, and the failure to inform him of the nature of the accusation against him (*see id.*, PageID. 6-8). In his petition, Lewis contends that

---

record does not indicate that a witness who was present in the house where and when the offense occurred ever gave a statement to the police, nor did she testify; [] the evidence shows that the shooting was accidental and that he is actually innocent; and [] his sentence was illegal based on discrimination and in violation of his rights to equal protection." (Doc. 7-16, PageID. 723) (footnote omitted).

the one-year limitations period set forth in 28 U.S.C. § 2244(d) has no application, as "[t]he records will reflect[] the petitioner has not never raised federal claims in state court or federal courts until now, please see Exhibit A[.]" (Doc. 1, PageID. 11).[10]

Because the Answer of the Respondent contained both a statute of limitations defense and a procedural default defense (*see* Doc. 7, PageID. 36-37), the undersigned entered a show cause order on May 13, 2022, instructing Petitioner to respond to each of those defenses by not later than June 14, 2022. (*See* Doc. 8, PageID. 750-58). Lewis has not filed a response to the undersigned's show cause order. (*See* Docket Sheet; *compare id. with* Doc. 8).

## CONCLUSIONS OF LAW

**A.** **Statute of Limitations.** The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

---

[10] Exhibit A consists of a document Lewis purportedly filed in the Circuit Court of Mobile County, Alabama on or about January 31, 2022, in which he sets forth the same issues raised in this Court, but with more detail. (*See* Doc. 1, PageID. 13-16).

States is removed, if the applicant was prevented from filing by such State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Lewis has made no showing (nor offered any argument) that subsections (B), (C), or (D) of § 2244(d)(1) apply to his case; therefore, the timeliness of Lewis' petition must be calculated under § 2244(d)(1)(A) based upon the date on which his attempted murder conviction became final "by the conclusion of direct review or the expiration of time for seeking such review[.]" *Id*. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* obviously is inapplicable since Lewis' conviction became final on November 19, 2009, 90-days after the Alabama Supreme Court denied Lewis' petition for writ of certiorari (and August 21, 2009) (Doc. 7-12) and the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance (*see* Doc. 7-13); that is, his conviction became final when the window for him to petition the United States Supreme Court for a writ of certiorari expired. *See*

*Pugh v. Smith,* 465 F.3d 1295, 1299 (11th Cir. 2006) (AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States."); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for a writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 13, 1997."); *Jackson v. Secretary for the Department of Corrections*, 292 F.3d 1347, 1348-49 & 1349 (11th Cir. 2002) ("While we have not directly dealt with the issue in the context of a section 2254 petition, we indicated in dicta that, under the AEDPA, a state prisoner may have the benefit of the 90-day window before his conviction is considered final. . . . In the instant case, the Fourth District Court of Appeals of Florida [] affirmed Jackson's conviction on October 17, 1997. Giving Jackson the extra 90 days in which he could have filed for certiorari to the Supreme Court, Jackson's conviction became final at the latest on January 15, 1998.").

Therefore, Lewis' one-year period of limitations under AEDPA began to run on November 19, 2009 and ran unabated for 245 days until it was tolled on July 22, 2010, when Lewis filed his Rule 32 state collateral petition attacking his conviction and sentence (*see* Doc. 7-14, PageID. 668 (Lewis' execution of his Rule 32 petition on July 22, 2010)). *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the

11

pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"). Petitioner's one-year limitations period began to run again after Lewis' Rule 32 proceedings were completed, which occurred on December 9, 2011, the date the Alabama Supreme Court denied Lewis' petition for writ of certiorari and the final judgment of affirmance was issued by the Alabama Court of Criminal Appeals. (*See* Docs. 7-20 & 7-21). Petitioner's one-year limitations period expired on April 7, 2012, after the running of an additional 120 days (that is, 120 plus 245= 365 days), almost ten (10) years before the filing of the instant federal habeas corpus petition on March 1, 2022 (*see* Doc. 1, PageID. 12). Accordingly, the only avenue by which this Court can consider the merits of the claims raised in Lewis' petition is by finding that he is entitled to equitable tolling of AEDPA's one-year limitations period, or, otherwise, by finding that he has established his factual innocence of the crime—attempted murder—for which he was convicted by a jury of his peers on July 25, 2007.[11]

---

[11]    Lewis' argument that the one-year limitations period does not apply to him because this is the first occasion in which he has raised federal claims in the state and federal courts (*see* Doc. 1, PageID. 11) is unavailing because Lewis did, in fact, previously raise federal claims in state court (*compare, e.g.,* Doc. 7-8, PageID. 582-84 (in determining that the trial court did not err in admitting into evidence Lewis' statements to the police, Alabama's criminal appellate court relied upon constitutional guarantees that ensure no involuntary confession and statements are admissible to convict an accused of a criminal offense and Supreme Court precedent recognizing that when a court is determining whether a confession was given voluntarily, it must consider the totality of the circumstances) *with* Doc. 7-14, PageID. 657-65 (in his Rule 32 state collateral attack on his conviction and sentence, Lewis raised at least one ineffective-assistance-of-counsel claim, referenced the denial of his Fifth Amendment rights, (Continued)

In *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the

Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable

tolling in appropriate cases[,]" *id.* at 645, 130 S.Ct. at 2560, and reiterated "that a

'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing." *Id.* at 649, 130 S.Ct. at 2562. For its part, the Eleventh Circuit

has long embraced the doctrine of equitable tolling with regard to the one-year

limitations period at issue: "Equitable tolling is to be applied when '"extraordinary

circumstances" have worked to prevent an otherwise diligent petitioner from timely filing

his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and

due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dep't*

*of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244

is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling

'when a movant untimely files because of extraordinary circumstances that are both

---

and riddled his petition with claims that he was denied a fundamentally fair trial and was
deprived of his Fourteenth Amendment right to equal protection of the laws)) and, more
importantly, because the claims Lewis now attempts to assert have long been available to him
and could have been raised in his first collateral state petition filed in 2010.  Besides, Exhibit A
attached to Lewis' federal habeas petition (*see* Doc. 1, PageID. 13-18) did not revive the one-
year limitations period. *Compare Sibley v. Culliver,* 377 F.3d 1196, 1204 (11th Cir. 2004) ("A
state court filing after the federal habeas filing deadline does not revive it.") *with Webster v.
Moore,* 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court
petitions must be 'pending' in order to toll the limitations period. A state-court petition like
Webster's that is filed following the expiration of the limitations period cannot toll that period
because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481,
148 L.Ed.2d 454 (2000) *and Pace DiGuglielmo,* 544 U.S. 408, 410, 125 S.Ct. 1807, 1810, 161
L.Ed.2d 669 (2005)  (recognizing that a state postconviction petition rejected by the state court
as untimely is not "properly filed" within the meaning of § 2244(d)(2)).

beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."). It is also clear that a federal court can consider the merits of an untimely § 2254 motion if the petitioner establishes that he is factually innocent of the crime for which he was convicted. *See San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

Lewis makes no argument (nor can he) that he is entitled to equitable tolling of the one-year limitations period, and since "there is nothing in the record to support its application[,]" *Stevens v. United States*, 2013 WL 3458152, *2 n.2 (N.D. Miss. Jul. 9, 2013), the undersigned will consider whether Petitioner has a viable "actual innocence" argument. In other words, because Lewis nowhere attempts to establish that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period,

*compare Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'") *with Pugh, supra,* 465 F.3d at 1300-01 ("Pugh bore the burden of establishing that equitable tolling was warranted."), the undersigned need only consider the "actual innocence" exception because it is clear that nothing other than Petitioner's own lack of due diligence is responsible for the untimeliness of the filing of the instant petition.

Lewis has not shown that he is entitled to have the untimeliness of his § 2254 petition excused based on actual innocence. In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the Supreme Court specifically held that "actual [factual] innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id.* at 386, 133 S.Ct. at 1928. However, the Supreme Court also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id*. (emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*., quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Here, of course, to the extent Lewis has made an actual innocence argument, that argument need fail because he has offered no new evidence establishing his actual (factual) innocence of the attempted murder of Leon Dunklin. Instead, to the extent Petitioner continues to maintain that the shooting was an accident,

and he did not intend to shoot Dunklin-,[12] such arguments do not support an actual (factual) innocence claim in accordance with *McQuiggin* because they rely on the nature of the evidence presented at Petitioner's trial (or the lack of evidence at his trial), not on any "new evidence." Thus, it is clear that Petitioner cannot take advantage of the actual innocence gateway recognized in *McQuiggin*.

This is not one of those rare cases in which principles of equitable tolling can save petitioner from AEDPA's one-year limitations period, nor has Lewis established his actual innocence of the offense (attempted murder) for which he was convicted by a jury of his peers. Accordingly, Lewis' § 2245 petition should be dismissed as time-barred in accordance with 28 U.S.C. § 2244(d).

### B.      Exhaustion of State Remedies and the Procedural Default Doctrine.

A threshold issue in a federal habeas corpus case brought by a state prisoner is whether the petitioner has properly raised the federal constitutional claims in the state courts, thereby exhausting all available state court remedies. 28 U.S.C. § 2254(b). The origins of the exhaustion requirement are found in principles of comity, "which protect the state court[]s['] role in the enforcement of federal law and prevent disruption of state court proceedings." *Jackson v. Estes,* 2015 WL 5117717, *8 (N.D. Ala. Aug. 28, 2015), citing *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).[13]

---

[12]      Whether the shooting was an accident or whether Lewis intended to shoot Dunklin was an issue for the jury to decide, and Lewis' jury made the determination that Lewis intended to shoot Dunklin.

[13]      The Supreme Court has long held

(Continued)

In order to exhaust his state remedies, a state prisoner who seeks federal habeas corpus relief must present the same claim to the state court that he presents to the federal court. *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Thus, in order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court,[14] either on direct appeal or on collateral review.[15] *See Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (quotation marks and citation omitted). In addition, the state court petition must make the state courts

---

that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.    .    .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Coleman v. Thompson,* 501 U.S. 722, 731 & 732, 111 S.Ct. 2546, 2554-2555 & 2555, 115 L.Ed.2d 640 (1991).

[14]     And, of course, therefore, "[c]laims which have never been presented to a state court . . . are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules." *Sanchez v. Hetzel,* 2014 WL 1491178, *2 (M.D. Ala. Apr. 15, 2014) (citations omitted).

[15]     Indeed, "[t]o challenge a conviction issued by an Alabama state court, a petitioner must assert the [federal] claim on direct appeal or in a Rule 32 proceeding, appeal any adverse ruling, seek rehearing in the Alabama Court of Criminal Appeals, and file a petition for writ of certiorari in the Alabama Supreme Court." *Shapley v. Thomas,* 2014 WL 4470700, *4 (N.D. Ala. Sept. 4, 2014) (citations omitted); *see Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]n order to exhaust state remedies as to a federal constitutional issue a petitioner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state, [*O'Sullivan v. Boerckel,* 526 U.S.] at 845-47, 119 S.Ct. at 1732-34."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002).

aware that the claims asserted do, in fact, raise federal constitutional claims. *See Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998).

> "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). More precisely, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* 845, 119 S.Ct. at 1732; *see also Kelley v. Secretary for Dep't of Corrs.,* 377 F.3d 1317, 1344 (11th Cir. 2004) ("The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'"). If a petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.

*Id.* (footnotes added and footnote omitted). In other words, when a petitioner has procedurally defaulted a claim by failing to exhaust state court remedies that are no longer available, *see O'Sullivan, supra,* 526 U.S. at 848-49, 119 S.Ct. at 1734, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is

cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In her answer, the respondent asserts that all of petitioner's claims are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Lewis' failure to "fairly present" these claims throughout "one complete round of the State's established appellate review process[,]" *id.* at 845, 119 S.Ct. at 1732 (*see* Doc. 7). *Compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. . . . In order to be exhausted, a federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the ***same*** claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).”), *cert. denied sub nom, McNair v. Allen,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for the Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) (“[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition.”), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). And, here, Petitioner has couched all his claims raised in his § 2254 federal petition as “federal” constitutional claims yet he has failed to raise every one of those claims (indeed, he has not raised any of those claims) to Alabama's Supreme Court. (*Compare* Doc. 1 *with* Doc. 7).

At best, Lewis states that he “exhausted” these claims in a pleading filed in the Circuit Court of Mobile County, Alabama on or about January 31, 2022. (*See* Doc. 1, PageID. 13-16). This action by Lewis, of course, avails him nothing both because this state-court filing is tardy, *Sibley, supra,* 377 F.3d at 1204 (“A state court filing after the federal habeas filing deadline does not revive it.”), and Petitioner nowhere establishes that he exhausted these claims all the way through to the Alabama Supreme Court.

Therefore, these claims are procedurally defaulted because state procedural rules would bar him from raising these claims in the state courts of Alabama. *Compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."). Accordingly, this Court is barred from reaching the merits of any claims raised by Lewis absent Petitioner demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

Petitioner has filed no response to the Respondent's Answer or to the undersigned's show cause order (*compare* Docket Sheet *with* Docs. 7 & 8). And because Lewis' petition itself does not contain any cause and prejudice argument, this Court should conclude that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not attempted to satisfy the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Lewis to show that "a constitutional violation has probably resulted in

the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To

be credible, a claim of actual innocence "requires petitioner to support his allegations of

constitutional error with new reliable evidence--whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not

presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d

808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability,

the petitioner must show that it is more likely than not that no reasonable juror would

have convicted him in the light of the new evidence."). "It is important to note in this

regard that 'actual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828

(1998) (citation omitted). As previously discussed in regard to the actual innocence

gateway in *McQuiggin, supra,* Lewis has not come forward with any new reliable

evidence that establishes his actual factual innocence of the attempted murder of Leon

Dunklin, for which he was convicted on July 25, 2007. Accordingly, this case is not one

of those rare cases in which the actual innocence exception is applicable.[16]

---

[16] The undersigned would parenthetically note that the records supplied by the State in this criminal case refute most of Lewis' principal conclusory allegations. For instance, there is nothing to indicate that an arrest warrant was issued, because Lewis was taken into custody at the location of the incident within hours (if not minutes) of the shooting. Therefore, his suggestion that the warrant was invalidly issued because it was unaccompanied by a separate affidavit (Doc. 1, PageID. 7) is baseless; there was no written arrest warrant issued. Moreover, his conclusory argument that his arrest was unconstitutional because he was not read his *Miranda* rights (*see* Doc. 1, PageID. 6) is specious given the testimony of Detective Hardeman at Lewis' trial (and, later, during a remand suppression hearing) that Lewis was read his *Miranda* rights and voluntarily waived those rights before he made three separate statements to the police. And to the extent Lewis, in fact, seeks to raise a claim related to the purported involuntariness of his statements to the police that is identical to the claim he raised on his direct appeal as of right, it is apparent that such an attack is barred by AEDPA's one-year limitations period.

**C.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and petitioner has defaulted the claims he wishes this Court to address pursuant to *O'Sullivan v. Boerckel,*

*supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Lewis should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that Joseph L. Lewis' petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). Alternatively, Petitioner is not entitled to any relief in this Court because he has procedurally defaulted his claims pursuant to *O'Sullivan v. Boerckel*. Petitioner is not

entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 22nd day of June, 2022.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**